UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
AT _____

| | | |
|---|---|---|
| DANA RUNNEBOHM | ) | |
| 3037 NORTH RUFFYS WAY | ) | |
| BLOOMINGTON, INDIANA 47401 | ) | Civil Action No.: |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| BLOOMINGTON POLICE DEPARTMENT | ) | |
| 220 EAST THIRD STREET | ) | |
| BLOOMINGTON INDIANA, 47401 | ) | |
| | ) | |
| Serve:  Chief of Police | ) | |
|         Michael Diekhoff | ) | |
|         220 E. Third St. | ) | |
|         Bloomington, Indiana 47404 | ) | |
| | ) | |
| And | | |
| | ) | |
| BLOOMINGTON CITY GOVERNMENT | ) | |
| 401 N. MORTON ST. | ) | |
| STE. 210 | ) | |
| BLOOMINGTON INDIANA, 47404 | ) | |
| | ) | |
| Serve:  Mayor Mark Kruzan | ) | |
|         401 N. Morton St. | ) | |
|         STE. 210 | ) | |
|         Bloomington Indiana, 47404 | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*****************************************

Comes now the Plaintiff, Dana Runnebohm by counsel, and for her Complaint against the

Defendants, Bloomington Police Department states and represents as follows:

# I. JURISDICTION AND VENUE

Plaintiff brings this action under 42 U.S. Code § 2000e et seq, specifically the American

Disability Act and Indiana Common Law.

1.  Plaintiff brings this action under the Americans with Disabilities Act of 1990, as amended, at

    126 U.S.C.A. § 12101, *et seq.*

2.  Plaintiff brings this action under common law torts recognized in the state of Indiana;

3.  This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 which gives district courts original

    jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States;

4.  Venue is appropriate in this judicial district under 28 U.S.C.A. § 1391(b) because the events that

    gave rise to this Verified Complaint occurred in this district;

# II. PARTIES

5.  The Plaintiff incorporates paragraphs 1-4 hereinabove;

6.  At all times relevant to this lawsuit, the Plaintiff, Dana Runnebohm, was a resident of

    Bloomington, Indiana. Plaintiff was an employee of the Bloomington Police Department for 19

    years and now works at Kroger as a Loss Prevention Specialist. Plaintiff was constructively

    discharged by way of forced medical retirement. Plaintiff is a 44 year old Caucasian female who

    suffers from Post Traumatic Stress Disorder, due to several traumatic instances that she was directly

    involved with in the line of duty. Plaintiff is an "employee" for the purposes of 42 U.S.C.A §

    12111(4), a "qualified individual" for the purposes of 42 U.S.C.A § 12111(8), and had a "disability"

    for the purposes of 42 U.S.C.A § 12102(1);

7.  That a defendant in this action is the Bloomington Police Department with a

    principle       office located at 220 E Third St Bloomington  IN 47404.  Defendant

Bloomington Police   Department can be served through the chief of police, Michael

Diekhoff.  Defendant  BPD is an "employer" for the purposes of 42 U.S.C.A §

12111(5)(A), and a "covered  entity" for the purposes of 42 U.S.C.A § 12111(2) 42 U.S.

Code § 2000.

8.      That a Defendant in this action is the Bloomington City Government (Defendant

Bloomington) .  According to the official website for Defendant Bloomington, their

principal office is located at Mark Kruzan 401 N. Morton St. Ste 210, Bloomington

Indiana 47404and they can be served through the Mayor, Mark Kruzan.  Defendant

Bloomington  is an "employer" for the purposes of 42 U.S.C.A § 12111(5)(A), and a

"covered entity" for the purposes of 42 U.S.C.A § 12111(2), 42 U.S. Code § 2000.;

### III. <u>FACTS</u>

9.      The Plaintiff hereby incorporates herein each and every allegation of paragraphs 1

through 8 above, as if fully set forth with particularity herein;

10.     Plaintiff began working for Defendants' Bloomington Police Department in 1996 as a

patrol officer.

11.     That Plaintiff was constructively discharged by way of forced medical retirement in

October of 2014.

12.     That from 2011 to 2012 the Plaintiff experienced at least four traumatic encounters that

severely affected her ability to function normally, and rendered her mentally disabled.

13.     That the first seriously traumatic event occurred in August of 2011.

14.     That on that day in the afternoon the Plaintiff was notified by dispatch of a dangerous

situation involving Domestic violence and that the alleged perpetrator could be using a gun.

15.     That Plaintiff was the First Responding Officer to the Scene.

16.     That upon arriving she observed a man with his arm around a woman's neck holding a
        gun to the woman's head.

17.     That it was extremely hot outside.

18.     That the man was forcing the woman to walk in bare feet on the pavement.

19.     That Plaintiff immediately confronted the perpetrator and told him to drop his weapon.

20.     That the perpetrator turned and opened fire on the Plaintiff.

21.     That the Plaintiff could not return fire because of the physical location of the victim.

22.     That the Plaintiff called for back up several times.

23.     That over the course of an hour the Plaintiff followed the Perpetrator and the victim
        closely.

24.     That backup finally arrived in the form of the SWAT team and other Police Officers.

25.     That the perpetrator stopped, pulled the victim in close, hugged her and then pushed her
        away.

26.     That the perpetrator then lifted his firearm and was shot to death by a SWAT sniper.

27.     That the victim suffered third degree burns on her feet.

28.     That after the incident the officers returned to the Police Station to fill out paperwork.

29.     That no debriefing session was offered or occurred.

30.     That no psychiatric help (even counseling) was offered to the Plaintiff.

31.     That the Plaintiff was deeply affected by what she witnessed.

32.     That the next seriously traumatic event occurred less than one year later in May of 2012.

33.     That on this occasion, at 6:45 a.m. the Plaintiff was driving to a local high school where she made different presentations.

34.     That she received notification from dispatch that there were reports of shots fired in a specific neighborhood.

35.     That Plaintiff was closest to that neighborhood and responded to the call.

36.     That when Plaintiff arrived she observed a man, completely, naked standing behind a house shooting a gun into the air.

37.     That Plaintiff got out of her car, into position, and commanded the perpetrator to drop his weapon.

38.     That the perpetrator then began unloading his clip at the Plaintiff.

39.     That the Plaintiff was terrified and forced to take cover behind a tree.

40.     That every time Plaintiff moved the perpetrator shot at her.

41.     That Plaintiff desperately called for back up and alerted the police of the situation.

42.     That the perpetrator then began shooting into the back of the house.

43.     That the Plaintiff knew the house was occupied.

44.     That back up finally arrived in the form of other Police Officers

45.     That the perpetrator only ceased firing after being shot in the legs twice.

46.     That after being shot in the legs twice the perpetrator continued to reach for his gun when Plaintiff and another officer jumped on top of him.

47.     That after this incident Plaintiff was severely disturbed.

48.     That Plaintiff began exhibiting signs of severe paranoia, anxiety and depression.

49.     That upon arriving at the Police Station to fill out paperwork about the incident Plaintiff again was not offered a debriefing session, nor psychiatric help.

50.     That Plaintiff was so upset she went to her Captain on her own to request help.

51.     That the Captain had to go to his boss the Chief of Police to get Permission to allow Plaintiff to receive counseling.

52.     That the process was embarrassing and humiliating for the Plaintiff as she believed that anyone involved should have a right to seek treatment.

53.     Plaintiff was only given one counseling session.

54.     That Plaintiff began experiencing severe emotional distress and debilitating mental anguish.

55.     That the Plaintiff began having night terrors and paranoid episodes where she believed someone was trying to target her or break into her house.

56.     That the next seriously traumatic incident occurred a few months later when the Plaintiff
        and another Officer responded to a call concerning a four month old baby who was not
        breathing.

57.     That dispatch got the lot number for the trailer wrong.

58.     That Plaintiff and the other officer went to the wrong address first, causing extreme
        distress for Plaintiff.

59.     That when Plaintiff and the other officer arrived at the scene the fire department and
        ambulance personnel were already there.

60.     That Plaintiff rode in the ambulance with the infant.

61.     That Plaintiff witnessed the death of the infant at the hospital.

62.     That the investigation revealed that the infant died because of neglect/abuse.

63.     That the infant was in the care of her mother's boyfriend who filled a bottle up with rice
        cereal and propped it in the child's mouth so that he could go to sleep.

64.     That the child choked and drowned to death on the rice cereal.

65.     That Plaintiff had to sit in the hospital room with the deceased infant for several hours
        awaiting the arrival of the detectives.

66.     That the boyfriend of the child's mother was never formally charged with anything.

67.     Again, Plaintiff was offered no debriefing session NOR any psychiatric help.

68.     That the last truly traumatic event that the Plaintiff experienced before she was disabled

to the point of barely functioning occurred in December of 2012 right before Christmas.

69.     At this time Plaintiff was called to a home in which she had to perform CPR on a woman who died in front of her fifteen year old child and husband.

70.     That Plaintiff was so disturbed she could barely make it through the day.

71.     That all of the above instances took place within a period of two (2) years.

72.     That witnessing and/or participating directly in these occurrences took an incredible toll on the Plaintiff.

73.     That she continued to experience extreme paranoia, night terrors and a general fear that she was going to be shot.

74.     That Plaintiff signed up for a voluntary training, a copy of the request form is attached hereto and labeled as Plaintiffs exhibit "A", entitled "Emotional Survival for Law Enforcement" hoping that she might be able to learn some coping mechanisms for the devastation she was feeling.

75.     That her mental state became so unbearable Plaintiff went in February of 2013 to seek treatment on her own.

76.     That Plaintiff was diagnosed by two Doctors with extreme PTSD, Depression and Anxiety, copies of her medical records are attached hereto and labeled as Plaintiffs Exhibits "B" and "C".

77.     That during the period of time between February and May of 2014 Plaintiff was

extremely suicidal and contemplated killing herself on a frequent basis.

78.     That Plaintiff was seeking treatment regularly in order to combat her mental disability.

79.     That Plaintiff is currently prescribed the following medication: Wellbutrin, Lexapro, Trazodone, Acuphex, Accupril, Norvase, Ortho Tri-Cyclen, Spironolactine and Metfrmin.

80.     That the disability became so severe that it substantially interfered with Plaintiffs ability to do her job as a Patrol Officer.

81.     That Plaintiff put her supervisor on notice that she was mentally disabled and asked for reasonable accommodations in the form of a "desk job" at the station.

82.     Plaintiff was told that no such position existed.

83.     That after being put on notice of Plaintiff's condition her supervisors did nothing to potentially address any issues or help in the recovery process.

84.     That in May of 2014 Plaintiff contracted pneumonia, two times and was extremely ill.

85.     That the Police Department sick leave policy can be found in the "Collective Bargaining Agreement Between the City of Bloomington and the Fraternal Order of Police Lodge 88, a copy of which is attached hereto and labeled as Plaintiff's Exhibit "D". which states:

**SECTION XV. Sickness/Injury**

Officers of the Department shall report sick only when they are suffering from an illness or injury which would prevent them from properly performing their assigned duties. Such report shall be made to the commanding officer at least one(1) hour prior to reporting time for each tour of duty.

Sick leave in excess of two (2) work days in a specified work week will require a doctor's statement. That statement will be forwarded to the Chief's office. The statement

should include the expected date of return and specify any limitations of duty.

The Chief of Police of Board of Public Safety may order a member to consult a physician, psychiatrist or clinic regarding a physical or psychological condition or for the purpose of obtaining a second opinion. Cost of such diagnostic consultation and/or testing shall be borne by the Department. Cost of therapy and/or treatment shall be borne by the officer. Reports of diagnostic consultation and/or testing shall be submitted to the Chief or Board.

Officers shall be entitled to sick leave with full pay without limitation, subject to processing or medical disability pension status under current Indiana law. Additionally, the City will pay for the medical expenses of the officer in accordance with Indiana law at the time of the illness or injury. Such expenses will be paid by the City to the extent that such expenses are not reimbursed by the officer's medical insurance or workers compensation insurance, subject to a maximum liability to the City of the amount of non-reimbursed medical expenses that would have been incurred if the officer was on the City's medical insurance plan.

A police officer who is unable to perform his or her full duties due to temporary medial limitations documented by the officers physician and provided to the Chief of Police as indicated herein, may be assigned to to her duties in the Department, at the discretion of the Chief of Police or his/her designee, so long as the reassignment is consistent with the recommendation of the police officer's physician that such reassignment will not jeopardize the health, safety and welfare of the police officer.

86.     That Plaintiff used six(6) days of sick leave in June because of her disability and three (3) days of her vacation days for the same reason.

87.     That after an extremely anguishing episode Plaintiff returned to work to find a MEMO on her desk from the Chief of Police, a copy of which is attached hereto and labeled as Plaintiff's Exhibit "E", which essentially orders Plaintiff to undergo a physical and psychological evaluation before she can return to duty.

88.     That Plaintiff was upset that she had to go see the Police Department Psychologist and was worried that if she didn't answer the questions the way she thought the Department would want her too she would lose her job.

89.     That because of that fear Plaintiff significantly downplayed her disability to the

Psychiatrist.

90.    That over the course of the next month Plaintiff's condition worsened to the point that

she texted both her Captain and her Sergeant and told them that she did not think she could

do it anymore (referring to being a Patrol Officer).

91.    After received the text message her Captain called her and spoke with her briefly, asking

if she needed someone to come to sit with her.

92.    Plaintiff told the Captain that she needed professional help and that she needed to take

some time to focus on attempting to recover from her severe PTSD or at least learn how to

cope/live with the condition.

93.    The Captain seemed to be understanding and told her to do what she needed to do and

take the time she needed but to be sure that she followed "sick leave procedure" which

included having her physician fill out FMLA paperwork if her recovery would take some

time.

94.    That Plaintiff followed her Captain's advice and began seeking treatment immediately

and had her doctor fill out FMLA paperwork.

95.    That the understanding regarding long term sick leave was that as a Police Officer they

had an unlimited amount of sick leave, but after approximately six months with no return

date the Chief of Police would begin the medical pension (medical retirement) process.

96.    On August 28, 2014, approximately one month after the Plaintiff started intense

treatment, she received a letter from the Bloomington Police Department's legal Counsel, a

copy of which is attached hereto and labeled as Plaintiff's Exhibit "F" which formally

notified Plaintiff that there would be a Hearing by the City of Bloomington Police Pension Board to determine whether or not she would be medically retired because of her disability.

97.     That Plaintiff attended this hearing on October 17, 2014, a copy of the proposed findings of facts are attached hereto and labeled as Plaintiff's exhibit "G", and it was determined that Plaintiff fell into the second category of disability.

98.     That the Board forced Plaintiff to take medical retirement and on November 26,2014 sent via certified mail sent their official findings, a copy of which is attached hereto and labeled as Plaintiff's Exhibit H, which in pertinent part stated the following:

[That] a review of the medical documents submitted finds Dana Runnebohm eligible for disability benefits. [That] a review of the evidence submitted finds *there was no suitable and available work within the department*. [That] the INPRS Board, therefore, grants disability benefits to Dana Runnebohm, [That] the local board [] determined that the applicable class of disability is Class 2. [That] the INPRS Medical Authority has determined that the applicable class of disability is Class 2. [That] the INPRS Medical Authority has determined that the applicants degree of impairment in this case is 10%... Accordingly, this disability benefit should be 45.04% of the first class salary.

99. That this posed a serious economic hardship on Plaintiff.

100.     That her disability was caused by her work for the Police Department and they refused to make reasonable accommodations for her.

101.     That they prematurely terminated her employment as she had only been on sick leave for a month.

102.   That the underhanded actions of the Police Department have further exacerbated the Plaintiff's conditions.

103.   That the Plaintiff now works for Kroger as a Loss Prevention Specialist and on occasion is forced to interact with her previous coworkers causing her mental anguish, anxiety, and humiliation.

104.   That Plaintiff was treated differently than any other Police Officer, to her detriment, because of her Disability which is well documented by her medical records.

## I. <u>DISABILITY DISCRIMINATION</u>

105.   The Plaintiff hereby incorporates herein each and every allegation of paragraphs 1 through 104 above, as if fully set forth with particularity herein;

106.   That the Americans with Disabilities Act of 1990, as amended, at 126 U.S.C.A. § 12101, *et seq* make it unlawful for an employer to treat persons with a disability differently;

107.   That the Defendants', The City of Bloomington  and Bloomington Police Department, are employers and did through the actions of their agents, specifically the Chief of Police, Michael Diekhoff single Plaintiff out because of her extreme PTSD, Anxiety, and Depression, and used her path to recovery as an unlawful pretext to force Plaintiff into Medical Retirement causing her to suffer from further anxiety, paranoia, and extreme emotional distress.

108.   That Plaintiff asked for reasonable accommodations and was told that none existed.

109.   That  Plaintiff, having shown that she was disabled, and was treated differently

and detrimentally compared to other employees by Defendants', The City of Bloomington and Bloomington Police Department, has suffered, and will continue to suffer, monetary losses based on monetary losses based on humiliation, personal indignity, embarrassment, apprehension about her future, mental anguish, and mortification of feelings, and loss of income, as well as, all benefits accrued by the Plaintiff during the time period at issue in this case;

## II. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

110.    The Plaintiff hereby incorporates herein each and every allegation of paragraphs of 1 through 109 above, as if fully set forth with particularity herein;

111.    That the Defendants', The City of Bloomington and Bloomington Police Department, helped facilitate Plaintiffs disability by refusing to offer any sort of help after each traumatic incident Plaintiff participated in. Further they never gave Plaintiff an opportunity to truly seek recovery because when she tried they forced her to take medical retirement. They used Plaintiff's disability as an excuse to constructively discharge Plaintiff.

112.    That Plaintiff suffered an extreme amount of emotional distress in a short period of time causing her disability, to which the Bloomington Police Departments only real response was to terminate her and force her into medical retirement which has and will continue to exacerbate her conditions and cause serious harm.

113.    That Plaintiff, having shown that Defendants' Bloomington Police Department and The City of Bloomington negligently inflicted emotional distress, has suffered, and will continue to suffer, monetary losses based on humiliation, personal indignity, embarrassment, apprehension about her future, mental anguish, and mortification of feelings, based on this negligent infliction of

emotional distress;

## COUNT III. VIOLATION OF THE REHABILITATION ACT.

114.     The Plaintiff hereby incorporates herein each and every allegation of paragraphs of 1 through 113 above, as if fully set forth with particularity herein;

115.    That 29 U.S.C. § 794(d)  *et seq.* states:  "The standards used to determine whether [the Rehabilitation Act] has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act.".

116.    That the Standard for determining whether or not a person's rights under the Rehabilitation Act have been violated is well documented in the following cases: *Doe v. Salvation Army*, 531 F.3d 355, 357 (6th Cir. 2008)  and *Hoback v. City of Chattanooga*, 2011 U.S. Dist. LEXIS 86431 (E.D. Tenn. Aug. 4, 2011).

117.    That Plaintiff That the Defendants', The City of Bloomington  and Bloomington Police Department, are employers and did through the actions of their agents, specifically the Chief of Police, Michael Diekhoff single Plaintiff out because of her extreme PTSD, Anxiety, and Depression, and used her path to recovery as an unlawful pretext to force Plaintiff into Medical Retirement causing her to suffer from further anxiety, paranoia, and extreme emotional distress.

118.    That Plaintiff asked for reasonable accommodations and was told that none existed.

119.    That  Plaintiff, having shown that she was disabled, and was treated differently and detrimentally compared to other employees by Defendants', The City of Bloomington and Bloomington Police Department, has suffered, and will continue to suffer, monetary losses based on monetary losses based on humiliation, personal indignity, embarrassment, apprehension about

her future, mental anguish, and mortification of feelings, and loss of income, as well as, all benefits accrued by the Plaintiff during the time period at issue in this case;

## COUNT IV.  PROMISSORY ESTOPPEL

120.     Plaintiff hereby incorporates each and every allegation contained in paragraphs 1 through 119 above, as if fully set forth with particularity herein;

121.     That Defendants' The City of Bloomington and Bloomington Police Department, through the actions of their agents,  made a promise to Plaintiff specifically that if she followed sick leave "protocol" she would be okay within the department;

122.     That Defendants' The City of Bloomington and The Bloomington Police Department should have reasonably expected Plaintiff to rely on this promise;

123.     That Plaintiff, to her detriment, did, in fact, rely on this promise;

124.     That injustice can only be avoided if Defendant Bloomington Police Department is required to fulfill its promises;

125.     That due to Defendants' The City of Bloomington and the Bloomington Police Department's failure to honor its promises, the Plaintiff has, and will continue to suffer damages in the form of lost wages, benefits, and pain and suffering, embarrassment, mortification of feelings, and should be made whole;

**WHEREFORE,** the Plaintiff, Dana Runnebohm, prays that this Court:

1.   Declare Defendants' The City of Bloomington and the Bloomington Police Department's conduct in violation of Dana Runnebohm's rights;

2.   Award Dana Runnebohm's compensatory damages in such amounts as must be proved at

trial for her economic and other losses;

3.  Award Dana Runnebohm's damages in an amount to prove at trial based on humiliation, embarrassment, apprehension about her future, emotional distress, personal indignity, mental anguish, and mortification of feelings which Defendants' The City of Bloomington and the Bloomington Police Department through the actions of their agents caused Dana Runnebohm's by their illegal, tortious, and discriminatory acts towards her;

4.  Award Dana Runnebohm's attorney fees, costs, and interest for a violation of her civil rights;

5.  Award Dana Runnebohm's punitive damages against Defendants' The City of Bloomington and the Bloomington Police Department  for their serious and negligent wrongs they committed against her alleged herein above;

6.  Award Dana Runnebohm's appropriate Damages under the Indiana Theory of Promissory Estoppel.

7.  Grant Dana Runnebohm's such further relief as this Court deems just & proper.

## JURY DEMAND

Plaintiff, Dana Runnebohm's , demands a jury to all issues triable by jury.

Respectfully submitted,

*/s/* Samuel G. Hayward

Samuel G. Hayward
Adams Hayward & Welsh
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366 – 6456
*Counsel for Plaintiff*